IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LESLEE ROSALIE BLOODSTONE, <br><br> Plaintiff, <br><br> vs. <br><br> JIM SALMONSEN et al., <br><br> Defendants. | **CV 23-33-H-BMM-KLD** <br><br><br> **ORDER** |

Three motions are pending before the Court: Defendants' motion to dismiss Plaintiff Leslee Bloodstone's claim for money damages and motion for summary judgment, and Bloodstone's motion to amend. (Docs. 14, 19, and 22.) The motions are fully briefed. Defendants' motion for summary judgment will be granted. The other motions will be denied as moot.

### I. BACKGROUND

Bloodstone is a transgender woman and inmate at Montana State Prison ("MSP") who suffers from gender dysphoria. (Doc. 8 at 4.) Bloodstone filed her original Complaint on May 17, 2023. Bloodstone alleged various violations of her Eighth Amendment rights at MSP. (Doc. 2.) The Court screened her Complaint and determined, for various reasons, that it failed to state a claim. (Doc. 7.) The Court allowed Bloodstone to amend, however, and Bloodstone timely amended on July 3, 2023. (Doc. 8.) The Amended Complaint was served.

1

In her Amended Complaint, Bloodstone alleges that the clinical staff at MSP, namely Licensed Nurse Practitioner Jodi Cozby, Medical Supervisor Dr. Paul Rees, and Registered Nurse Melissa Scharf, (collectively, "Defendants") are violating her Eighth Amendment rights to medical care by not providing her with adequate treatment for her gender dysphoria, specifically, denying her requests for gender affirming care. *Id.* Bloodstone names defendants in their official capacities. *Id.* Bloodstone seeks an injunction directing MSP to provide her with gender affirming surgery. (Doc. 8 at 5.) Bloodstone's Amended Complaint also seeks money damages. *Id.*

Defendants moved to dismiss Bloodstone's claim for monetary damages on September 22, 2023, due to Defendants being named in their official capacities, thereby rendering the request a violation of the State of Montana's Eleventh Amendment immunity. (Doc. 14.) Bloodstone's response acknowledged the mistake and, simultaneously, Bloodstone moved to amend her Amended Complaint to correct the oversight. (Docs. 18 and 19.)

Defendants moved for summary judgment on the issue of administrative exhaustion on October 11, 2023. (Doc. 22.) Defendants have supported their motion with a statement of undisputed facts ("SUF"), derived from Bloodstone's extensive grievance file from MSP. (Docs. 24 and 24-1.)

Following extensions, Bloodstone timely responded on December 15, 2023. (Doc. 33.) Defendants filed a reply on December 28, 2023, (Doc. 35) and Bloodstone filed what the Court will consider a surreply on January 8, 2024 (Doc. 37).

## II. ANALYSIS

Defendants contend that the Court must dismiss Bloodstone's Amended Complaint for failure to exhaust her MSP administrative remedies. (Doc. 23.)

### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a

genuine issue for trial." *Id*. The Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor when deciding a motion for summary judgment. *Id*. at 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

    B. Exhaustion

   The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement provides as follows:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).

   A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93 - 97 (2006). Exhaustion proves mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). The Court will analyze the failure to exhaust defense first.

A defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If a defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (citing *Booth*, 532 U.S., at 737–738.) Inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738.)

Three general situations can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or

5

consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct., at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). The procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Congress has determined that the inmate should err on the side of exhaustion when an administrative process is susceptible of multiple reasonable interpretations. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.*, at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance

process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Prison regulations define the exhaustion requirements under the PLRA. *Jones*, 549 U.S. at 218. MSP 3.3.3 requires inmates to grieve matters related to medical and health services. MSP 3.3.3(III)(K) (Doc. 23-1.) Except for emergency grievances, the Inmate Grievance Program involves four steps: (1) informal resolution, (2) formal grievance, (3) appeal to the Warden, and (4) appeal to the Director of the DOC. MSP 3.3.3(III)(E), (III)(F), (III)(I), (III)(K). Timelines exist for properly submitting grievances. MSP 3.3.3(III)(D). "If an inmate fails to advance to the next level of the grievance program within the stated time limit, [s]he will be considered to have forfeited the opportunity to exhaust [ ] administrative remedies under the inmate grievance program." MSP 3.3.3(III)(D)(5).

Defendants' brief in support of their motion for summary judgment contends that Bloodstone's Amended Complaint is barred for three failures to exhaust her administrative remedies: 1) she failed to grieve the denial of gender affirming surgery prior to filing suit; 2) she failed to complete the grievance process regarding surgery; and 3) she failed to name any of the defendants in her grievances. (Doc. 23.) Part of Defendants' argument relies on the proposition that

Bloodstone improperly grieved her lack of surgery only after she had filed her Complaint. (Doc. 23 at 8.) Defendants subsequently filed a notice acknowledging that overlooked Ninth Circuit precedent foreclosed this aspect of their argument. (Doc. 36.) The Court will focus on the second and third points: 1) Bloodstone's alleged failure to exhaust the grievance process after her initial grievance regarding surgery, and 2) Bloodstone's alleged failure to specifically grieve the conduct of any of Defendant.

Bloodstone asserts that she has exhausted her remedies regarding surgery. (Doc. 33 at 2.) Bloodstone contends that she filed a grievance, but it was "not processed," and thus, that was the end of the procedure available to her. *Id.* Bloodstone also states that she does not know the source of the alleged policy against gender affirming surgery at MSP, and, therefore, she cannot "grieve a policy she knows nothing specific about." *Id.* Finally, Bloodstone adds that she met with a transgender specialist on August 29, 2023, who confirmed her diagnosis of gender dysphoria. (Doc. 33 at 3.)

Bloodstone supported her brief with a Statement of Disputed Facts ("SDF") that does not comply with D. Mont. L.R. 56.1(b), because it corresponds in no way to Defendants' SUF. (Doc. 34.) In it, Bloodstone discusses "the ongoing issue of the Plaintiff being cut off her hormone medication," which was not discussed in Defendants' brief. (Doc. 34 at 3.) The facts as to her grievances related to gender

8

affirming surgery, which make up the rest of Bloodstone's SDF, however, remain undisputed. The question is, as a matter of law, whether Bloodstone properly exhausted her claim regarding surgery, first, by exhausting her grievance process regarding surgery, and second, by exhausting her claims against the named defendants.

Bloodstone first grieved the lack of surgery on May 7, 2023. (Doc. 24 at 9); (Doc. 8-1 at 3). The original document was an Informal Resolution Form that, in part, requested surgery. The informal form also requested to "allow for my social transition by selling makeup on canteen and allow my gender expression." Defendants responded that gender affirming surgeries are not currently provided by the Department of Corrections, that Medical does not have any effect on the canteen, and to continue working with "medical and mental health for your needs and treatment plan." (Doc. 8-1 at 3.)

Bloodstone followed with a formal grievance on June 1, 2023. (Doc. 8-1 at 4.) The formal grievance included the same two action requests. The June 6, 2023, response read, "Not processed. You are grieving two separate [sic] issues. Also you are grieving issues you have previously grieved. This is not allowed per MSP procedure 3.3.3. And therefore this will not be process according to policy." *Id.* MSP 3.3.3(III)(G)(4) limits a formal grievance to "a single issue or a reasonable number of closely related issues." (Doc. 23-1 at 5.) If a formal grievance is not

processed for including "multiple unrelated issues on a single form," the inmate has 48 hours from receipt to "make the necessary changes."

It is undisputed that Bloodstone failed to make the necessary changes and refile her formal grievance. *See* (Doc. 34 at 2.) Once a defendant has demonstrated failure to exhaust, the plaintiff must bring forth some explanation for that failure. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Bloodstone does not explain why she stopped, other than stating in her response that she "thus conclude[ed] the grievance process due to not being able to grieve any further." (Doc. 33 at 2.) In an unsworn Declaration attached to her SDF, Bloodstone states that, based on her experience, she originally did not grieve the surgery issue because she "assumed that grieving the surgery issue would likewise have been denied or not processed and it would have only been a dead end." (Doc. 34-1 at 1-2.)

None of this excuses Bloodstone's failure to exhaust. The PLRA requirement is mandatory. As Bloodstone's extensive grievance file demonstrates, she has previously completed the grievance procedure all the way to the Director level, the last step in the process. (Doc. 24 at ¶¶ 19, 23, 25, and 47.) Bloodstone also has had at least 15 grievances granted, many related to her medications or the availability of bras. (Doc. 24 at ¶ 17, 23, 29, 31, 37, 45, 61.) Bloodstone has had grievances granted above the formal level. (Doc. 24 at 24-30.) Bloodstone has not

10

established that she was unable to grieve further or that she did not understand the grievance process. Bloodstone simply chose not to proceed.

Completing the grievance procedure allows MSP to correct its own course, if it chooses to do so. Someone on the command level must know about any issue to change policy. If Bloodstone did not pursue her claims to the level of someone who has some capacity to do something about it, she has missed an opportunity to resolve the issue before resorting to litigation—the purpose of the exhaustion requirement in the PLRA. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court, and it discourages disregard of [the agency's] procedures." (Quotation marks omitted)). Defendants are entitled to summary judgment regarding Bloodstone's surgery claim.

Bloodstone also failed to name Defendants in her grievances, which is the second defect identified by Defendants. MSP policy requires an inmate to "state the name of every individual against whom the inmate is making the claim." MSP 3.3.3(III)(G)(3). The grievance process is not properly fulfilled if an individual's conduct is not identified. Bloodstone had been advised of this requirement. (*See, e.g.*, Doc. 24-9 at 1; 24-15 at 1; 24-16 at 1; 24-27 at 1.) None of Bloodstone's grievances named any Defendant as a perpetrator of a problem. *See e.g.* (Doc. 34-2

11

at 2) (grieving the actions of "prison medical staff here at M.S.P."); *see also* (Doc. 34-2 at 7) (grieving the actions of "prejudiced staff"); (Doc. 34-2 at 19) (grieving the actions of "[MSP] Administration and staff in general"); *compare* (Doc. 34-2 at 9) (stating that Bloodstone is "now under chronic care with" Defendant Jodi Cozby but not identifying Cozby as a perpetrator of grieved conduct). This absence violates the rules regarding grievances, but more importantly, undermines the efficacy of the procedure. A superior cannot review and correct unconstitutional behavior by staff if the staff member is not properly identified.

Finally, Bloodstone asserts that she could not find the policy, and, therefore, could not grieve it. (Doc. 33 at 2). If anything, that argument supports the idea that Bloodstone should have pursued her issues administratively, to their conclusion, before she came to federal court. A policy may not exist. Bloodstone could only learn about the lack of a policy, however, by exhausting her remedy to the point where she could say she had a final answer. Bloodstone failed to do so. Defendants are entitled to summary judgment on exhaustion.

As one final note, the Court must address the issue of medication, which Bloodstone mentions in the Attachment to her Amended Complaint. (Doc. 8 at 12.) In identifying the defendants, Bloodstone states that Defendant Scharf "has purposely messed with my medication regiment to pursue retaliation when I complained about my meds being inaccurate or unavailable to me in Disciplinary

Segregation." *Id.* Bloodstone also mentions fluctuating blood hormone levels "due to inadequate and inconsistent hormone therapy treatment" as an injury in her Amended Complaint, but she does not request any specific relief related to her medication. (Doc. 8 at 5.)

The issue of Bloodstone's hormone medication appeared in her grievances, which she characterizes as an "ongoing issue." (Doc. 34 at 3.) The Court has read the entire grievance file attached to Defendants' SUF, and it clear that there have been occasional problems providing Bloodstone's medication to her when she has changed housing units. *See e.g.* (Doc. 34-2.) In addition, there have been times when doses have been skipped, or there have been other errors. *Id*. The Court declines to determine whether Bloodstone states a claim for deliberate indifference as to hormone medication because, even if Bloodstone does state such a claim, none of her grievances alleges misconduct *on the part of Defendant Scharf or any other named Defendant*. *See generally* (Doc. 34-2); *see also* (Doc. 24 at ¶¶ 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60, 64 and 70.) Bloodstone does not dispute these facts. Bloodstone does state that Defendant Scharf was the person who denied Bloodstone's informal grievance on May 7, 2023, related to surgery. (Doc. 34 at 2.) As explained above, however, Bloodstone failed to exhaust that grievance; Defendant Scharf would have had no notice that an ongoing issue related to surgery was being taken to a

higher level of authority. Even if Bloodstone states a claim for deliberate indifference as to hormone medication, the grievance file demonstrates that she never grieved any of Scharf's allegedly retaliatory conduct. *See* (Doc. 34-2). The claim remains unexhausted.

### III. MOTION TO AMEND/MOTION TO DISMISS

Defendants moved to dismiss Bloodstone's request for damages. (Doc. 14.) In response, Bloodstone moved to amend her Amended Complaint, though her motion did not include a copy of the proposed Second Amended Complaint. (Doc. 19.) Bloodstone specifically sought to add individual capacity claims against Defendants. (Doc. 19 at 2.) Amending the Complaint in that regard would not affect the Court's exhaustion analysis. As such, both of these motions are moot and will be denied.

### IV. CONCLUSION

Bloodstone raises legitimate issues regarding medical care at MSP. The PLRA exhaustion requirements remains mandatory. The undisputed record shows that Bloodstone failed to fully exhaust her request related to surgery and her claims against the individual named Defendants. Defendants are entitled to summary judgment.

Should further issues arise, the Court advises Bloodstone to specifically name the persons she alleges act unlawfully in grievances and other administrative

documentation and advises Bloodstone to pursue any grievance to exhaustion if she intends to seek judicial redress.

Based upon the foregoing, the Court issues the following:

## ORDER

1. Defendants' motion for summary judgment (Doc. 22.) is **GRANTED**.

2. All other pending motions are **DENIED** as moot.

3. The Clerk of Court is directed to enter judgment pursuant to Fed. R. Civ. P. 58.

**DATED** this 28th day of February, 2024.

_____
Brian Morris, Chief District Judge
United States District Court